**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Shannon J. Leap (SBN 339574)
sleap@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiff Luring Paialii

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LURING PAIALII,<br><br>           Plaintiff,<br><br>      v.<br><br>CITY OF BURBANK; MANUEL MALDONADO; RASHAAD COLEMAN; N. GUNN; D. MEJIA; M. ANDERSON; and DOES 1 through 10, inclusive,<br><br>           Defendants. | **Case No. 2:24-cv-8890**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Fourth Amendment, Unlawful Detention and Arrest (42 U.S.C. § 1983);<br>2. Fourth Amendment, Excessive Force (42 U.S.C. § 1983);<br>3. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983);<br>4. False Arrest/False Imprisonment;<br>5. Battery;<br>6. Negligence;<br>7. Violation of the Bane Act.<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

LURING PAIALII, individually, for his Complaint against Defendants CITY OF BURBANK, MANUEL MALDONADO; RASHAAD COLEMAN; N. GUNN; D. MEJIA; M. ANDERSON and DOES 1 through 10, inclusive, alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3.     This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution in connection with their unlawful beating of Plaintiff LURING PAIALII on September 12, 2023, which caused him serious injury, significantly impacting his quality of life.

4.      Plaintiff alleges that the injuries he suffered were the result of the excessive use of force by officers of the Burbank Police Department, including Defendants MANUEL MALDONADO; RASHAAD COLEMAN; N. GUNN; D. MEJIA, M. ANDERSON and DOES 1 through 7 (collectively "Defendant officers"); and were also a result of Defendants' failure to provide reasonable medical care to Plaintiff despite Plaintiff's serious medical condition after being severely beaten by the Defendant officers.

5.     The policies and customs behind the uses of excessive force against

civilians such as Plaintiff are fundamentally unconstitutional and have violated the civil rights of residents of and people within the the CITY OF BURBANK, such as Plaintiff. Accordingly, Plaintiff herein seeks by means of this civil rights action to hold accountable those responsible for Plaintiff's injuries and to challenge the unconstitutional policies and practices of the CITY and its policymaking officials.

## PARTIES

6.    At all relevant times, Plaintiff LURING PAIALII ("Plaintiff" or "Mr. Paialii") was an individual residing in the City of Lancaster in the County of Los Angeles, who at the time of the incident, maintained employment in the City of Burbank, County of Los Angeles, California. Mr. Paialii sues in his individual capacity and seeks compensatory and punitive damages under federal and state law.

7.    At all relevant times, Defendant CITY OF BURBANK ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Burbank Police Department ("BPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, Defendant CITY was the employer of Defendants MANUEL MALDONADO; RASHAAD COLEMAN; N. GUNN; D. MEJIA, M. ANDERSON, and DOES 1-10.

8.    At all relevant times, Defendants MANUEL MALDONADO ("MALDONADO"); RASHAAD COLEMAN ("COLEMAN"); N. GUNN ("GUNN"); D. MEJIA ("MEJIA"); and M. ANDERSON ("ANDERSON") were duly appointed by CITY as BPD officers and employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials. MALDONADO, COLEMAN, GUNN, ANDERSON, and MEJIA acted under color of

law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY and the BPD, and under the statutes and regulations of the State of California. At all relevant times, MALDONADO, COLEMAN, GUNN, ANDERSON, and MEJIA acted within the course and scope of their employment with the CITY and the BPD.

9.    At all relevant times, Defendants DOES 1-7 ("DOE OFFICERS") were duly appointed by CITY as BPD officers and employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials. DOES 1-7 acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY and the BPD, and under the statutes and regulations of the State of California. At all relevant times, DOES 1-7 acted within the course and scope of their employment with the CITY and the BPD.

10.    At all relevant times, Defendants DOES 8-10 were managerial, supervisorial, and policymaking employees of the BPD, who were acting under color of law and within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the BPD. DOES 8-10 were acting with the complete authority and ratification of their principal, Defendant CITY. At all relevant times, DOES 8-10 acted within the course and scope of their employment with the CITY and the BPD.

11.    Defendants    MALDONADO,    COLEMAN,    GUNN,    MEJIA, ANDERSON, and DOE OFFICERS are sued in their individual capacities.

12.    In doing the acts and failing and omitting to act as hereinafter described, Defendants MALDONADO, COLEMAN, GUNN, MEJIA, ANDERSON, and DOE OFFICERS were acting on the implied and actual permission and consent of Defendant CITY.

13.    The true names and capacities of DOES 1-10 are currently unknown to Mr. Paialii, who otherwise sues these Defendants by such fictitious names. Mr. Paialii will seek leave to amend this Complaint to show the true names and capacities of these

Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

14.    At all times mentioned herein, each and every Defendant, including DOES 1-10, was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

15.    All of the acts complained of herein by Mr. Paialii against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting with the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained herein.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

16.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

17.    Plaintiff LURING PAIALII is a 23-year-old young man, who worked as a delivery truck driver for an ice-cream delivery company named Jeff and Tony's located in Burbank, California.

18.    On or about the the afternoon of September 12, 2023, Mr. Paialii was working his driving shift delivering ice creams to various stores in the area. The truck he drove was an older vehicle and Mr. Paialii noticed the truck was breaking abnormally, in hard stops.

19.    On information and belief, Mr. Paialii's employer received at least one phone call from an unidentified member of the public notifying them that the truck – later identified as the truck Mr. Paialii drove – appeared to be having driving issues. On information and belief, the employer called Mr. Paialii to inquire about the status of his deliveries and the alleged driving issues. Mr. Paialii let his employer know that he was almost finished with his deliveries and that he was experiencing trouble with the truck's breaking.

20.    Mr. Paialii and his employer agreed that he should drive the truck to return to the company office. Unbeknownst to Mr. Paialii, on information and belief, his employer called 9-1-1 to report Mr. Paialii for "possibly driving under the influence," despite having no specific information that Mr. Paialii had consumed any substances that would impact his driving.

21.    Mr. Paialii arrived back and his employer's headquarters, parked the truck, and went to the employee office to "clock out" for the day. As Mr. Paialii clocked out, and sat down in a chair in the office, Defendants MALDONADO, COLEMAN, and GUNN came into the employee office. ANDERSON, stood just outside the doorway to the office.

22.    Defendants MALDONADO, COLEMAN, and GUNN told Mr. Paialii that they were there to investigate the "possible D.U.I." 9-1-1 call and asked Mr. Paialii whether he had consumed any drugs or alcohol that day.

23.    Mr. Paialii calmly stated that he had not consumed any drugs, alcohol, or any other substances that day that would affect his driving. Mr. Paialii advised the officers that the truck he was assigned to drive was old and that he had experienced issues with its breaking.

24.    The DEFENDANT OFFICERS continued to question Mr. Paialii, without advising him as to whether he was being detained or arrested for any particular offense.

25.    Furthermore, at no point during their questioning did the DEFENDANT OFFICERS Mirandize Mr. Paialii, even though all three officers stood blocking the exit door of the office and would not permit Mr. Paialii to leave.

26.    Mr. Paialii stood up from his chair to give himself more space between himself and the officers, as the Defendant Officers advised him he was permitted to do.

27.    Because the Defendant Officers had not communicated to Mr. Paialii that was was being detained or arrested, Mr. Paialii tried to leave the room, given that he had completed his work day, however, the Defendant Officers would not permit him

1  to leave the room.

2     28.    Defendants MALDONADO and GUNN began to corner Mr. Paialii in the

3  office, giving him commands to turn around and get on the ground. No officer advised

4  Mr. Paialii whether he was being arrested or detained, let alone what alleged crime he

5  was being arrested or detained for, apart from the vague allusions to an investigation

6  for a "possible D.U.I." At the same time, COLEMAN drew his taser and pointed it at

7  Mr. Paialii.

8     29.    Escalating the situation, COLEMAN yelled at Mr. Paialii to "get on the

9  ground now or you're gonna get tased!"

10    30.    MALDONADO grabbed Mr. Paialii's forearm to initiate an arrest. At the

11  same time, COLEMAN holstered his taser, and COLEMAN and GUNN also grabbed

12  Mr. Paialii's torso and forcibly took Mr. Paialii down to the ground, breaking a table

13  in the office in the process.

14    31.    At all relevant times, Mr. Paialii's hands were visibly empty, and he made

15  no physical threats, nor did he attempt to make physical threats.

16    32.    While the three DEFENDANT OFFICERS were on top of Mr. Paialii,

17  MALDONADO, without warning, grabbed Mr. Paialii's chin with one hand and

18  punched Mr. Paialii's head at least five times with a closed fist. MALDONADO also

19  kicked Mr. Paialii in the side torso. Mr. Paialii attempted to cover his own face from

20  MALDONADO'S punches. There was a struggle to complete the arrest of Mr. Paialii.

21    33.    COLEMAN, without warning, also struck Mr. Paialii in the face or head

22  multiple times with a closed-fist punch. GUNN held Mr. Paialii down on the ground

23  and put his arm against Mr. Paialii's throat while Mr. Paialii was on the ground. Mr.

24  Paialii continued to try to block his head and face from MALDONADO's punches to

25  his head.

26    34.    MALDONADO repositioned himself to be on top of Mr. Paialii's torso,

27  pinning Mr. Paialii down with his bodyweight. At the same time, COLEMAN

28  unholstered his taser and, without warning, deployed it into Mr. Paialii's thigh. Mr.

Paialii's body tensed and seized up as he screamed in pain. As COLEMAN tased Mr. Paialii, thereby rendering Mr. Paialii immobile, COLEMAN also ordered Mr. Paialii to turn onto his stomach.

35.    COLEMAN then tased Mr. Paialii a third time, even though Mr. Paialii was not moving in any threatening manner and was complying with the officers' commands the as much as humanly possible, given that he was being tased, had multiple officers on top of him while pinning him down with their bodyweight, and had just been punched in the face and head multiple times. MALDONADO and GUNN rolled Mr. Paialii onto his side and began to handcuff him.

36.    MEJIA entered the office and effected Mr. Paialii's arrest with MALDONADO, GUNN, and COLEMAN. MEJIA held Mr. Paialii's arm and torso down while MALDONADO, COLEMAN, and GUNN, put handcuffs on Mr. Paialii's wrists.

37.    At all relevant times, on information and belief, ANDERSON was aware of MALDONADO, COLEMAN, GUNN, and MEJIA's detention, arrest, and excessive use of force against Mr. Paialii; had an opportunity to intervene in the officers' detention, arrest, and excessive and unreasonable use of force against Mr. Paialii; and failed to take reasonable steps to intercede in the detention, arrest, and excessive use of force against Mr. Paialii, despite having an opportunity to do so.

38.    Approximately five more DOE officers entered the office and surrounded Mr. Paialii as the DEFENDANT OFFICERS rolled Mr. Paialii over on to his stomach and fastened the handcuffs on his wrists. MALDONADO continuously forced Mr. Paialii's right hand to be bent at the wrist even though Mr. Paialii was already handcuffed, prone on the ground, and not moving. Mr. Paialii cried out in pain.

39.    MALDONADO, COLEMAN, GUNN, MEJIA, and DOES 1-7 stood Mr. Paialii up, walked him outside and put him in the patrol unit. Mr. Paialii was not checked by any paramedic, EMT, or medical care provider prior to being detained in the patrol unit, despite having sustained multiple punches to the head and face by

MALDONADO and COLEMAN, and at least three tasings by COLEMAN. Mr. Paialii's face was bleeding and swollen; his leg bled where he was tased, and was in pain from other injuries he sustained as a result of the DEFENDANT OFFICERS' use of force against him.

40.    On information and belief, without any legitimate reason, DEFENDANT OFFICERS failed to timely summon or call for medical personnel to the scene to treat Mr. Paialii for the injuries he sustained from the DEFENDANT OFFICERS' repeated beatings and tasings.

41.    Additionally, the involved officers – COLEMAN, MALDONADO, GUNN, ANDERSON, and MEJIA were not separated from each other prior to providing their use of force statements at the scene.

42.    At all relevant times, Defendants COLEMAN, MALDONADO, GUNN, ANDERSON, and MEJIA, and DOES 1-7 did not have reasonable suspicion to detain or probable cause to arrest Mr. Paialii, but proceeded to arrest Mr. Paialii, nevertheless.

43.    As Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7 handcuffed Mr. Paialii, without probable cause, they continued to escalate the situation despite that at all relevant times, Mr. Paialii was not posing any risk of harm to the Defendants or any other person.

44.    At all relevant times,  DEFENDANT OFFICERS had no information that Mr. Paialii posed any threat of injury to anyone, nor did they have information that Mr. Paialii had actually injured anyone.

45.    At all relevant times, Mr. Paialii posed no imminent threat of bodily harm to Defendant officers or anyone else.

46.    At all relevant times, Mr. Paialii made no physical threats to any officer or anyone else.

47.    At all relevant times, Defendants could observe that Mr. Paialii was unarmed and had no weapons in his possession.

48.    At all relevant times, Defendant Officers had no information that Mr.

COMPLAINT FOR DAMAGES

Paialii had committed a crime unrelated to the alleged poor driving reported by Mr. Paialii's employers.

49.     At all relevant times, Defendant Officers failed to take steps to de-escalate the situation or give Mr. Paialii the opportunity to cooperate with their instructions or comply with their orders prior to beating and arresting him.

50.     As a result of the Defendant officers' repeated strikes to Mr. Paialii's head kicks to his body, multiple tasings, forcibly bringing Mr. Paialii to the ground, and holding him down against the pavement road using their body weight, Mr. Paialii suffered significant injuries, some of which continue to persist  – over one year after the incident. Mr. Paialii suffered numerous scrapes and bruises to his face, head, collarbone, and shoulders.

51.     In addition to his lasting physical problems, Mr. Paialii was significantly traumatized by the arrest and unjustified beating and tasing he experienced and has suffered significant emotional harm. Mr. Paialii suffers from continued anguish and distress from memories of the beating. As a lasting result of the beating and the injuries he suffered, Mr. Paialii's quality of life has been significantly diminished.

## **FIRST CLAIM FOR RELIEF**

**Fourth Amendment – Unreasonable Search and Seizure – Unlawful Detention and Arrest; Failure to Intercede (42 U.S.C. § 1983)**

Plaintiff LURING PAIALII against Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON and DOES 1-7

52.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this complaint with the same force and effect as if fully set forth herein.

53.     Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7 detained Mr. Paialii without probable cause.

54.     When Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7 used physical force including beating, punching, and kicking, Mr. Paialii in his face, eyes, torso, and extremeties, tasing Mr. Paialii, and then

placed Mr. Paialii in hancuffs, they violated Mr. Paialii's right to be secure in his person agaisnt unreasonable searches and seizures as guaranteed to Mr. Paialii under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

55. At all relevant times, Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON and DOES 1-7 acted under color of state law. COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7 had no reasonable suspicion to detain Mr. Pailii and no probable cause to arrest him. In addition to the unjustified and forceful takedown of Mr. Paialii in his employer's office being unreasonable, the scope and manner of the detention was unreasonable. It was not necessary to use force against Mr. Paialii by punching, beating, kicking, and tasing him as he complied with Defendants' orders. Moreover it was not necessary to continue these uses of physical force after Mr. Paialii was prone, face down, on the ground, and being handcuffed.

56. At all relevant times, on information and belief, ANDERSON was aware of MALDONADO, COLEMAN, GUNN, and MEJIA's unlawful detention and arrest of Mr. Paialii; had an opportunity to intervene in the officers' detention and arrest of Mr. Paialii; and failed to take reasonable steps to intercede in the unlawful detention and arrest of Mr. Paialii, despite having an opportunity to do so.

57. The conduct of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7 was done with reckless disregard for the rights and safety of Mr. Paialii and therefore warrants the imposition of exemplary and punitive damages as to Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7. As a direct result of the unreasonable detention and arrest, Mr. Paialii experienced severe pain and suffering for which he is entitled to recover damages.

58. As a result of their misconduct, Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7 are liable for Mr.

Paialii's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

59.    Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from his phsycial injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

60.    Plaintiff also seeks attorney's fees and costs for this claim, pursuant to 42 U.S.C. § 1988.

### SECOND CLAIM FOR RELIEF

**Fourth Amendment - Unreasonable Search and Seizure - Excessive Force;**
**Failure to Intercede (42 U.S.C. § 1983)**

Plaintiff LURING PAIALII against Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7

61.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

62.    Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7's uses of force against Mr. Paialii were excessive and unreasonable under the circumstances. At the time of the beating, Mr. Paialii made no attempt to flee, and had committed no serious crime.

63.    These Defendants' uses of force were further excessive in that Mr. Paialii never physically injured them or anyone else before being beaten and never brandished a weapon.

64.    At all relevant times, on information and belief, ANDERSON was aware of MALDONADO, COLEMAN, GUNN, and MEJIA's excessive use of force against Mr. Paialii; had an opportunity to intercede in the officers' excessive and unreasonable use of force against Mr. Paialii; and failed to take reasonable steps to intercede in the excessive use of force against Mr. Paialii, despite having an opportunity to do so.

65.    The unreasonable use of force by Defendants COLEMAN,

MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7 deprived Mr. Paialii of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. Paialii under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

66.    As a result, Mr. Paialii suffered severe pain and suffering. Defendants are therefore liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

67.    As a result of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7's conduct, they are liable for Mr. Paialii's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

68.    The conduct of Defendants Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Paialii and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

69.    Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from his phsycial injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

70.    Plaintiff also seeks attorney's fees under this claim pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

### Fourth Amendment - Denial of Medical Care (42 U.S.C. § 1983)

(Plaintiff LURING PAIALII against Defendants Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7)

71.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

72.    After beating Mr. Paialii and causing him serious injury, Defendants Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES

1-7 did not timely summon or provide timely medical attention for Mr. Paialii, who was bleeding and had just been tased. On information and belief, these Defendants did not immediately summon medical care.

73.    The denial of medical care by Defendants Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7 deprived Mr. Paialii of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to Mr. Paialii under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

74.    As a result, Mr. Paialii suffered severe pain and suffering and long-term physical injuries. Defendants are therefore liable to Mr. Paialii for compensatory damages under 42 U.S.C. § 1983.

75.    Defendants    COLEMAN,    MALDONADO,    GUNN,    MEJIA, ANDERSON, and DOES 1-7 knew that failure to provide timely medical treatment to Mr. Paialii could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, exacerbating his pain and suffering.

76.    The conduct of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Paialii and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

77.    Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from his phsycial injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

78.    Plaintiff also seeks attorney's fees under this claim pursuant to 42 U.S.C. § 1988.

///

///

1

**FOURTH CLAIM FOR RELIEF**

2

**False Arrest/False Imprisonment**

3

(By Plaintiff LURING PAIALII against all DEFENDANTS)

4      79.    Plaintiff repeats and re-alleges each and every allegation in the

5  foregoing paragraphs of this Complaint with the same force and effect as if fully set

6  forth herein.

7      80.    Defendants COLEMAN, MALDONADO, GUNN, MEJIA,

8  ANDERSON, and DOES 1-7, inclusive, while working as deputies for the BPD and

9  acting within the course and scope of their duties, intentionally deprived Mr. Paialii

10  of his freedom of movement by use of force, threats of force, menace, fraud, deceit,

11  and unreasonable duress. Defendants COLEMAN, MALDONADO, GUNN, MEJIA,

12  ANDERSON, and DOES 1-7, inclusive, detained Mr. Paialii without reasonable

13  suspicion and arrested him without probable cause.

14      81.    Mr. Paialii did not knowingly or voluntarily consent.

15      82.    Defendants COLEMAN, MALDONADO, GUNN, MEJIA,

16  ANDERSON, and DOES 1-7, inclusive, detained Mr. Paialii for an appreciable

17  amount of time.

18      83.The conduct of Defendants COLEMAN, MALDONADO, GUNN, MEJIA,

19  ANDERSON, and DOES 1-10 inclusive, was a substantial factor in causing the harm

20  to Mr. Paialii.

21      84.    Defendant CITY is vicariously liable for the wrongful acts of

22  Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and

23  DOES 1-10, inclusive, pursuant to section 815.2(a) of the California Government

24  Code, which provides that a public entity is liable for the injuries caused by its

25  employees within the scope of the employment if the employee's act would subject

26  him or her to liability.

27      85.    The conduct of COLEMAN, MALDONADO, GUNN, MEJIA,

28  ANDERSON, and DOES 1-10, inclusive, was malicious, wanton, oppressive, and

1  accomplished with a conscious disregard for the rights of Mr. Paialii, entitling
2  Plaintiff to an award of exemplary and punitive damages.

3      86.    As a result of their misconduct, Defendants COLEMAN,
4  MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-10, inclusive, are
5  liable for Mr. Paialii's injuries, either because they were integral participants in the
6  wrongful detention and arrest, or because they failed to intervene to prevent these
7  violations.

8      87.    Plaintiff brings this claim and seeks damages on this claim, including
9  for Plaintiff's injuries, including for pain and suffering, emotional distress from his
10 physical injuries, humiliation, disfigurement, financial loss, and reduced earning
11 capacity.

## FIFTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code § 820 and California Common Law)

(By Plaintiff LURING PAIALII against all DEFENDANTS)

15     88.    PLAINTIFF repeats and re-alleges each and every allegation of the
16 foregoing paragraphs as if fully set forth herein.

17     89.    Defendants  COLEMAN,  MALDONADO,  GUNN,  MEJIA,
18 ANDERSON, and DOES 1-7, inclusive, while working as officers, sergeants,
19 and in other capacities, for the Burbank Police Department, and acting within the
20 course and scope of their duties, tased, and brutally attacked Mr. Paialii.  As a
21 result of the actions of Defendants COLEMAN, MALDONADO, GUNN,
22 MEJIA, ANDERSON, and DOES 1-7, inclusive, Mr. Paialii was seriously
23 injured.  Defendants  COLEMAN,  MALDONADO,  GUNN,  MEJIA,
24 ANDERSON, and DOES 1-7, inclusive, had no legal justification for using force
25 against Mr. Paialii, and Defendants COLEMAN, MALDONADO, GUNN,
26 MEJIA, ANDERSON, and DOES 1-7's use of force while carrying out their
27 duties as officers was unreasonable under the circumstances.

28     90.    At all relevant times, on information and belief, ANDERSON was aware

of MALDONADO, COLEMAN, GUNN, and MEJIA's excessive use of force against Mr. Paialii; had an opportunity to intercede in the officers' excessive and unreasonable use of force against Mr. Paialii; and failed to take reasonable steps to intercede in the excessive use of force against Mr. Paialii, despite having an opportunity to do so.

91. At all relevant times, Mr. Paialii was not an immediate threat of bodily injury to anyone, including DEFENDANTS.

92. Defendant CITY and DOES 8-10, inclusive, are directly liable and responsible for the acts of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7, inclusive, because Defendant CITY and DOES 8-10, inclusive, failed to adequately train, discipline, supervise, or in any other way control Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7, inclusive, in the exercise of their unlawful use of excessive and unreasonable force.

93. Defendant CITY is vicariously liable for the wrongful acts of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment is the employees' acts would subject them to liability.

94. The conduct of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7, inclusive, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Paialii, entitling Mr. Paialii to an award of exemplary and punitive damages.

95. Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from his physical injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

## **SIXTH CLAIM FOR RELIEF**

### **Negligence (Cal. Govt. Code § 820 and California Common Law)**

(By Plaintiff LURING PAIALII against all DEFENDANTS)

96.     PLAINTIFF repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

97.     Police officers, including DEFENDANTS, have a duty to use reasonable care to prevent harm and injury to others.  This duty includes using appropriate tactics, giving appropriate commands, giving appropriate warnings, and not using any force unless necessary, using the least amount of force necessary, and only using deadly force as a last resort.  These duties also include providing proper training and equipment to deputies so that they may perform their duties in accordance with the department policies, properly investigate use of force incidents, and punish, re-train, terminate, and/or prosecute violators of those policies and the law.

98.     Additionally, the involved officers – COLEMAN, MALDONADO, GUNN, ANDERSON, and MEJIA were not separated from each other prior to providing their use of force statements at the scene.

99.     The DEFENDANTS breached their duty of care.  Upon information and belief, the actions and inactions of DEFENDANTS were negligent and reckless, including but not limited to:

(a)     the failure to properly and adequately assess the need to use force against Mr. Paialii;

(b)     the negligent tactics and handling of the situation with Mr. Paialii, including actions before the physical attack;

(c)     the negligent scope and manner of the detention, arrest, and use of force, against Mr. Paialii;

(d)   the failure to properly train and supervise employees, both professional and non-professional, including Defendants COLEMAN, MALDONADO, GUNN, MEJIA, ANDERSON, and DOES 1-7, inclusive;

(e)   the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs and protect the rights of Mr. Paialii;

(f)   the negligent handling of evidence, witnesses, and the negligent investigation of the use of excessive force against Mr. Paialii;

(g)   the failure to punish, re-train, terminate, and/or prosecute violators of Department policies and the law;

(h)   The failure to separate involved officers in the interim time period between their use of force against a civilian and their subsequent statements; and

(i)   The failure to intervene or intercede in fellow officers' unreasonable use of force against a civilian.

100.   As a direct and proximate result of DEFENDANTS' conduct as alleged above, and other undiscovered negligent conduct, Mr. Paialii was caused to suffer severe past and future mental and physical pain and suffering, loss of enjoyment of life, medical expenses, and lost earning capacity.

101.   At all relevant times, Mr. Paialii was not an immediate threat to anyone, including DEFENDANTS.

102.   The CITY is vicariously liable for the wrongful acts of DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employees' act would subject him or her to liability.

103.   Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from

his physical injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

## SEVENTH CLAIM FOR RELIEF

### (Violation of Cal. Civ. Code § 52.1 and California Common Law)

(By PLAINTIFF against all DEFENDANTS)

104.    PLAINTIFF repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

105.    California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts against another person for exercising that person's constitutional rights, which can be shown by a reckless disregard for that person's civil rights. Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred by a reckless disregard for the person's civil rights.

106.    On information and belief, COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Mr. Paialii or acted in reckless disregard of Mr. Paialii's civil rights, including by beating him and tasing him without justification or excuse, and by denying him necessary medical care, to prevent him from exercising his right or to retaliate against him for having exercised his rights.

107.    DEFENDANTS violated Mr. Paialii's Fourth Amendment rights to be free from unreasonable seizures when they used excessive and unreasonable force against him.  DEFENDANTS specifically intended to violate Mr. Paialii's constitutional rights as stated above, as demonstrated by DEFENDANT'S reckless disregard for PLAINTIFF'S constitutional rights.  Thus, PLAINTIFF

can recover for violation of the Bane Act. *See Reese v. County of Sacramento*, 888 F.3d 1030, 1040-45 (2018).

108.     On September 12, 2023, DEFENDANTS punched and tased Mr. Paialii multiple times, even though he was unarmed and presented no threat to the officers or anyone else.  DEFENDANTS then brutally manhandled Mr. Paialii as he writhed in pain from the taser deployment.

109.     DEFENDANTS violated Mr. Paialii's Constitutional right to be free from excessive and unreasonable force by police officers.  DEFENDANTS intended to violate Mr. Paialii's rights and/or acted with reckless disregard with regard to Mr. Paialii's Constitutional rights, which is evidence that they intended to violate Mr. Paialii's rights.

110.     Mr. Paialii was caused to suffer severe pain and suffering.  The conduct of DEFENDANTS was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Paialii.

111.     CITY is vicariously liable for the wrongful acts of DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

112.     The conduct of the individual DEFENDANTS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Paialii, entitling him to an award of exemplary and punitive damages.  Mr. Paialii also seeks costs and attorneys' fees.

113.     Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from his physical injuries, humiliation, disfigurement, financial loss, and reduced earning capacity. Plaintiffs also seek treble damages, attorney's fees, and costs under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff LURING PAIALII requests entry of judgment in his favor and against Defendants COLEMAN, MALDONADO, GUNN, and MEJIA, CITY OF BURBANK, and DOES 1-10, inclusive, as follows:

A.  For compensatory damages in an amount according to proof at trial;

B.  For other general damages in an amount according to proof at trial;

C.  For other non-economic damages in an amount according to proof at trial;

D.  For other special damages in an amount according to proof at trial;

E.  For punitive damages against the individual defendants in an amount to be proven at trial;

F.  For treble damages pursuant to California Civil Code Sections 52, 52.1

G.  Attorney's fees pursuant to 42 U.S.C. § 1988;

H.  For interest;

I.  For reasonable costs of this suit; and

J.  For such further other relief as the Court may deem just, proper, and appropriate.


DATED: October 15, 2024          **LAW OFFICES OF DALE K. GALIPO**


By: __*/s/ Dale K. Galipo*_____
DALE K. GALIPO
SHANNON J. LEAP

Attorneys for Plaintiff

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

The Plaintiff named herein hereby demands a trial by jury.

DATED: October 15, 2024            **LAW OFFICES OF DALE K. GALIPO**


By: __/s/ Dale K. Galipo_____
     DALE K. GALIPO
     SHANNON J. LEAP

     Attorneys for Plaintiff

COMPLAINT FOR DAMAGES