**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (SBN 284500)
evalenzuela@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiff Luring Paialii

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LURING PAIALII,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BURBANK; MANUEL MALDONADO; RASHAAD COLEMAN; NEIL GUNN; DAVID MEJIA; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No. 2:24-cv-08890-CAS-PVC**<br>*Hon. Christina A. Snyder*<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Fourth Amendment, Excessive Force (42 U.S.C. § 1983);<br>2. Battery;<br>3. Negligence;<br>4. Violation of the Bane Act.<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

LURING PAIALII, individually, for his Complaint against Defendants CITY OF BURBANK, MANUEL MALDONADO; RASHAAD COLEMAN; NEIL GUNN; DAVID MEJIA and DOES 1 through 10, inclusive, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3. This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution in connection with their unlawful beating of Plaintiff LURING PAIALII on September 12, 2023, which caused him serious injury, significantly impacting his quality of life.

4. Plaintiff alleges that the injuries he suffered were the result of the excessive use of force by officers of the Burbank Police Department, including Defendants MANUEL MALDONADO, RASHAAD COLEMAN, NEIL GUNN, DAVID MEJIA and DOES 1 through 7 (collectively "Defendant officers"); and were also a result of Defendants' failure to provide reasonable medical care to Plaintiff despite Plaintiff's serious medical condition after being severely beaten by the Defendant officers.

5. The policies and customs behind the uses of excessive force against

civilians such as Plaintiff are fundamentally unconstitutional and have violated the civil rights of residents of and people within the the CITY OF BURBANK, such as Plaintiff. Accordingly, Plaintiff herein seeks by means of this civil rights action to hold accountable those responsible for Plaintiff's injuries and to challenge the unconstitutional policies and practices of the CITY and its policymaking officials.

## PARTIES

6. At all relevant times, Plaintiff LURING PAIALII ("Plaintiff" or "Mr. Paialii") was an individual residing in the City of Lancaster in the County of Los Angeles, who at the time of the incident, maintained employment in the City of Burbank, County of Los Angeles, California. Mr. Paialii sues in his individual capacity and seeks compensatory and punitive damages under federal and state law.

7. At all relevant times, Defendant CITY OF BURBANK ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Burbank Police Department ("BPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, Defendant CITY was the employer of Defendants MANUEL MALDONADO, RASHAAD COLEMAN, NEIL GUNN, DAVID MEJIA and DOES 1-10.

8. At all relevant times, Defendants MANUEL MALDONADO ("MALDONADO"); RASHAAD COLEMAN ("COLEMAN"); and NEIL GUNN ("GUNN"); and DAVID MEJIA ("MEJIA) were duly appointed by CITY as BPD officers and employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials. MALDONADO, COLEMAN, GUNN and MEJIA acted under color of law, to wit, under the color of the statutes, ordinances,

1 regulations, policies, customs, and usages of Defendant CITY and the BPD, and under the statutes and regulations of the State of California. At all relevant times, MALDONADO, COLEMAN, GUNN and MEJIA acted within the course and scope of their employment with the CITY and the BPD.

9. At all relevant times, Defendants DOES 1-7 ("DOE OFFICERS") were duly appointed by CITY as BPD officers and employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials. DOES 1-7 acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY and the BPD, and under the statutes and regulations of the State of California. At all relevant times, DOES 1-7 acted within the course and scope of their employment with the CITY and the BPD.

10. At all relevant times, Defendants DOES 8-10 were managerial, supervisorial, and policymaking employees of the BPD, who were acting under color of law and within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the BPD. DOES 8-10 were acting with the complete authority and ratification of their principal, Defendant CITY. At all relevant times, DOES 8-10 acted within the course and scope of their employment with the CITY and the BPD.

11. Defendants MALDONADO, COLEMAN, GUNN, MEJIA and DOE OFFICERS are sued in their individual capacities.

12. In doing the acts and failing and omitting to act as hereinafter described, Defendants MALDONADO, COLEMAN, GUNN, MEJIA and DOE OFFICERS were acting on the implied and actual permission and consent of Defendant CITY.

13. The true names and capacities of DOES 1-10 are currently unknown to Mr. Paialii, who otherwise sues these Defendants by such fictitious names. Mr. Paialii will seek leave to amend this Complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

14. At all times mentioned herein, each and every Defendant, including DOES 1-10, was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

15. All of the acts complained of herein by Mr. Paialii against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting with the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained herein.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

16. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

17. Plaintiff LURING PAIALII is a 23-year-old young man, who worked as a delivery truck driver for an ice-cream delivery company named Jeff and Tony's located in Burbank, California.

18. On or about the the afternoon of September 12, 2023, Mr. Paialii was working his driving shift delivering ice creams to various stores in the area. The truck he drove was an older vehicle and Mr. Paialii noticed the truck was braking abnormally, in hard stops.

19. On information and belief, Mr. Paialii's employer received at least one phone call from an unidentified member of the public notifying them that the truck – later identified as the truck Mr. Paialii drove – appeared to be having driving issues. On information and belief, the employer called Mr. Paialii to inquire about the status of his deliveries and the alleged driving issues. Mr. Paialii let his employer know that he was almost finished with his deliveries and that he was experiencing trouble with the truck's braking.

20. Mr. Paialii and his employer agreed that he should drive the truck to return to the company office. Unbeknownst to Mr. Paialii, on information and belief, his

employer called 9-1-1 to report Mr. Paialii for "possibly driving under the influence," despite having no specific information that Mr. Paialii had consumed any substances that would impact his driving.

21. Mr. Paialii arrived back and his employer's headquarters, parked the truck, and went to the employee office to "clock out" for the day. As Mr. Paialii clocked out, and sat down in a chair in the office, Defendants MALDONADO, COLEMAN, and GUNN came into the employee office.

22. Defendants MALDONADO, COLEMAN, and GUNN told Mr. Paialii that they were there to investigate the "possible D.U.I." 9-1-1 call and asked Mr. Paialii whether he had consumed any drugs or alcohol that day.

23. Mr. Paialii calmly stated that he had not consumed any drugs, alcohol, or any other substances that day that would affect his driving. Mr. Paialii advised the officers that the truck he was assigned to drive was old and that he had experienced issues with its braking.

24. The DEFENDANT OFFICERS continued to question Mr. Paialii, without advising him as to whether he was being detained or arrested for any particular offense.

25. Mr. Paialii stood up from his chair to give himself more space between himself and the officers, as the Defendant Officers advised him he was permitted to do.

26. Because the Defendant Officers had not communicated to Mr. Paialii that was was being detained or arrested, Mr. Paialii tried to leave the room, given that he had completed his work day, however, the Defendant Officers would not permit him to leave the room.

27. Defendants MALDONADO and GUNN began to corner Mr. Paialii in the office, giving him commands to turn around and get on the ground. No officer advised Mr. Paialii whether he was being arrested or detained, let alone what alleged crime he was being arrested or detained for, apart from the vague allusions to an investigation for a "possible D.U.I." At the same time, COLEMAN drew his taser and pointed it at

1 Mr. Paialii.

2 28. Escalating the situation, COLEMAN yelled at Mr. Paialii to "get on the
3 ground now or you're gonna get tased!"

4 29. While Mr. Paialii was standing up, and prior to being forcefully taken
5 down to the ground by the involved officers, Mr. Paialii verbally threatened the
6 involved officers while they were trying to detain him, including threatening to slap
7 the officers if they touch him. During Mr. Paialii's initial encounter with the involved
8 police officers and prior to being forcefully taken down to the ground, Mr. Paialii
9 advanced towards one of the officers and got in the officer's face while yelling at the
10 officer to not touch him. The involved officers also grabbed onto Mr. Paialii's arms
11 and torso and Mr. Paialii tensed up and pulled away prior to being taken to the ground.
12 Mr. Paiallii initially resisted the officers attempts to detain him, prior to being
13 forcefully taken down to the ground, including by advancing towards one of the
14 officers, getting in the officer's face and verbally threatening to slap the officer and
15 then physically resisting and struggling with the officers while they were attempting to
16 detain him, including by tensing up and pulling away. As explained below, this
17 conduct by Mr. Paialii occurred before being taken down to the ground and formed the
18 factual basis for his misdemeanor P.C. § 69 plea.

19 30. MALDONADO grabbed Mr. Paialii's forearm to initiate an arrest. At the
20 same time, COLEMAN holstered his taser, and COLEMAN and GUNN also grabbed
21 Mr. Paialii's torso and forcibly took Mr. Paialii down to the ground, breaking a table
22 in the office in the process.

23 31. At all relevant times, Mr. Paialii's hands were visibly empty.

24 32. After Mr. Paialli was taken down to the ground and while the three
25 DEFENDANT OFFICERS were on top of Mr. Paialii, MALDONADO, without
26 warning, grabbed Mr. Paialii's chin with one hand and punched Mr. Paialii's head at
27 least five times with a closed fist. MALDONADO also kicked Mr. Paialii in the side
28 torso. Mr. Paialii attempted to cover his own face from MALDONADO'S punches.

33. COLEMAN, without warning, also struck Mr. Paialii in the face or head multiple times with a closed-fist punch. GUNN held Mr. Paialii down on the ground and put his arm against Mr. Paialii's throat while Mr. Paialii was on the ground. Mr. Paialii continued to try to block his head and face from MALDONADO's punches to his head.

34. MALDONADO repositioned himself to be on top of Mr. Paialii's torso, pinning Mr. Paialii down with his bodyweight. At the same time, COLEMAN unholstered his taser and, without warning, deployed it into Mr. Paialii's thigh. Mr. Paialii's body tensed and seized up as he screamed in pain. As COLEMAN tased Mr. Paialii, thereby rendering Mr. Paialii immobile, COLEMAN also ordered Mr. Paialii to turn onto his stomach.

35. COLEMAN then tased Mr. Paialii a third time, even though Mr. Paialii was not moving in any threatening manner and was complying with the officers' commands the as much as humanly possible, given that he was being tased, had multiple officers on top of him while pinning him down with their bodyweight, and had just been punched in the face and head multiple times. MALDONADO and GUNN rolled Mr. Paialii onto his side and began to handcuff him.

36. MEJIA entered the office and assisted in Mr. Paialii's arrest along with MALDONADO, GUNN, and COLEMAN. MEJIA held Mr. Paialii's arm and torso down while MALDONADO, COLEMAN, and GUNN, put handcuffs on Mr. Paialii's wrists.

37. Approximately five more DOE officers entered the office and surrounded Mr. Paialii as the DEFENDANT OFFICERS rolled Mr. Paialii over on to his stomach and fastened the handcuffs on his wrists. MALDONADO continuously forced Mr. Paialii's right hand to be bent at the wrist even though Mr. Paialii was already handcuffed, prone on the ground, and not moving. Mr. Paialii cried out in pain.

38. MALDONADO, COLEMAN, GUNN, MEJIA, and DOES 1-7 stood Mr. Paialii up, walked him outside and put him in the patrol unit. Mr. Paialii's face was

bleeding and swollen; his leg bled where he was tased, and was in pain from other injuries he sustained as a result of the DEFENDANT OFFICERS' use of force against him.

39. At all relevant times, DEFENDANT OFFICERS had no information that that Mr. Paialii had actually injured anyone.

40. At all relevant times, Defendants could observe that Mr. Paialii was unarmed and had no weapons in his possession.

41. Defendant Officers failed to take steps to de-escalate the situation.

42. As a result of the Defendant officers' repeated strikes to Mr. Paialii's head kicks to his body, multiple tasings and holding him down against the pavement road using their body weight, Mr. Paialii suffered significant injuries, some of which continue to persist – over one year after the incident. Mr. Paialii suffered numerous scrapes and bruises to his face, head, collarbone, and shoulders.

43. In addition to his lasting physical problems, Mr. Paialii was significantly traumatized by the arrest and unjustified beating and tasing he experienced and has suffered significant emotional harm. Mr. Paialii suffers from continued anguish and distress from memories of the beating. As a lasting result of the beating and the injuries he suffered, Mr. Paialii's quality of life has been significantly diminished.

44. On February 7, 2024, Mr. Paialii pled no contest to CA Penal Code ("PC") section 69 (misdemeanor resisting arrest).  Prior to being taken down to the ground, Mr. Paialii verbally threatened the involved officers while they were initially trying to detain him, including threatening to slap the officers if they touched him.  During Mr. Paialii's initial encounter with the involved police officers and prior to being forcefully taken down to the ground, Mr. Paialii was advancing towards one of the officers and got in the officer's face while yelling at the officer to not touch him.  The involved officers grabbed onto Mr. Paialli's arms and torso and he engaged in a physical struggle with the involved officers prior to being tackled down to the ground.  Mr. Paiallii resisted the officers attempts to detain him, prior to being forcefully taken down to the

ground, including by advancing towards one of the officers, getting in the officer's face and verbally threatening to slap the officer and then resisting the officers while they were attempting to detain him, before being taken down to the ground.

45. The factual basis for Mr. Paialii's PC 69 conviction occurred prior to him being forcefully taken down to the ground by the involved officers, where he was punched and tased multiple times. The factual basis for Mr. Paialii's conviction occurred when he verbally threatened the involved officers while they were trying to detain him, including threating to slap the officers if they touched him, and when he advanced towards one of the officers and got in the officer's face while yelling at the officer to not touch him and when the officers grabbed onto Mr. Paialii's arms and torso and they engaged in a struggle, prior to the officers tackling him down to the ground. The involved officers use of excessive force against Mr. Paialli includes their use of body weight, control holds, several strikes and punches and multiple taser applications. All of the physical force used against Mr. Paialli after he had been taken down to the ground, including the punches and taser applications, all occurred after Mr. Paialii was no longer verbally threatening the officers, after he had stopped advancing towards any of the officers and while Mr. Paialli was restrained by body weight. Importantly, at no point did Mr. Paialli ever try to punch, kick or strike any of the officers and he never attempted to gain access to the officers' weapons.

46. There was a factual basis for Mr. Paialii's conduct, which led to his conviction for PC section 69, which occurred prior to the Mr. Paialii being forcefully taken down to the ground by the involved officers, as referenced above.

47. The involved officers used excessive force after Mr. Paialii initially resisted, after he had verbally threatened the officers and after he was tackled down to the ground, and since Mr. Paialii was unarmed and not trying to punch, kick or strike the involved officers when he was punched and tased multiple times while on the ground, the PC 69 plea does not preclude Mr. Paialii from pursuing federal and state claims for use of unreasonable force and excessive after he was taken down to the

ground.

# FIRST CLAIM FOR RELIEF

**Fourth Amendment - Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983)**

Plaintiff LURING PAIALII against Defendants COLEMAN, MALDONADO, GUNN, MEJIA and DOES 1-7

48. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

49. Defendants COLEMAN, MALDONADO, GUNN, MEJIA and DOES 1-7's uses of force against Mr. Paialii after he had been taken down to the ground was excessive and unreasonable under the circumstances including the officers use of body weight, control holds, several strikes and punches and multiple taser applications.

50. These Defendants' uses of force were further excessive in that Mr. Paialii never brandished a weapon and never attempted to punch or stike the involved officers or gain access to their weapons.

51. The unreasonable use of force by Defendants COLEMAN, MALDONADO, GUNN, MEJIA and DOES 1-7 deprived Mr. Paialii of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. Paialii under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

52. As a result, Mr. Paialii suffered severe pain and suffering. Defendants are therefore liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

53. As a result of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7's conduct, they are liable for Mr. Paialii's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

54. The conduct of Defendants Defendants COLEMAN, MALDONADO,

GUNN, MEJIA, and DOES 1-7 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Paialii and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

55. Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from his phsycial injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

56. Plaintiff also seeks attorney's fees under this claim pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### Battery (Cal. Govt. Code § 820 and California Common Law)

(By Plaintiff LURING PAIALII against all DEFENDANTS)

57. PLAINTIFF repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

58. Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, inclusive, while working as officers, sergeants, and in other capacities, for the Burbank Police Department, and acting within the course and scope of their duties, tased, and brutally attacked Mr. Paialii. As a result of the actions of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, inclusive, Mr. Paialii was seriously injured. Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, inclusive, had no legal justification for using force against Mr. Paialii after he stopped resisting and after he verbally threatened the involved officers, and Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7's use of force while carrying out their duties as officers was unreasonable under the circumstances including the officers use of body weight, control holds, several strikes and punches and multiple taser applications after Mr. Paialii had been taken down to the ground.

59. While being forcefully taken down to the ground and punched and tased while on the ground, Mr. Paialii was not an immediate threat of bodily injury to anyone, including DEFENDANTS.

60. Defendant CITY and DOES 8-10, inclusive, are directly liable and responsible for the acts of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, inclusive, because Defendant CITY and DOES 8-10, inclusive, failed to adequately train, discipline, supervise, or in any other way control Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, inclusive, in the exercise of their unlawful use of excessive and unreasonable force.

61. Defendant CITY is vicariously liable for the wrongful acts of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment is the employees' acts would subject them to liability.

62. The conduct of Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, inclusive, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Paialii, entitling Mr. Paialii to an award of exemplary and punitive damages.

63. Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from his physical injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

## THIRD CLAIM FOR RELIEF

### Negligence (Cal. Govt. Code § 820 and California Common Law)

(By Plaintiff LURING PAIALII against all DEFENDANTS)

64. PLAINTIFF repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

65. Police officers, including DEFENDANTS, have a duty to use reasonable care to prevent harm and injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving appropriate warnings, and not using any force unless necessary, using the least amount of force necessary, and only using deadly force as a last resort. These duties also include providing proper training and equipment to deputies so that they may perform their duties in accordance with the department policies, properly investigate use of force incidents, and punish, re-train, terminate, and/or prosecute violators of those policies and the law.

66. Additionally, the involved officers – COLEMAN, MALDONADO, GUNN, and MEJIA were not separated from each other prior to providing their use of force statements at the scene.

67. The DEFENDANTS breached their duty of care. Upon information and belief, the actions and inactions of DEFENDANTS were negligent and reckless, including but not limited to:

    (a) the failure to properly and adequately assess the need to use force against Mr. Paialii;

    (b) the negligent tactics and handling of the situation with Mr. Paialii, including actions before the physical attack;

    (c) the negligent use of force against Mr. Paialii including the use of body weight, control holds, punches, strikes and taser applications after he had been taken down to the ground;

  (d) the failure to properly train and supervise employees, both professional and non-professional, including Defendants COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, inclusive;

  (e) the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs and protect the rights of Mr. Paialii;

  (f) the negligent handling of evidence, witnesses, and the negligent investigation of the use of excessive force against Mr. Paialii;

  (g) the failure to punish, re-train, terminate, and/or prosecute violators of Department policies and the law;

  (h) The failure to separate involved officers in the interim time period between their use of force against a civilian and their subsequent statements; and

  (i) The failure to intervene or intercede in fellow officers' unreasonable use of force against a civilian.

68. As a direct and proximate result of DEFENDANTS' conduct as alleged above, and other undiscovered negligent conduct, Mr. Paialii was caused to suffer severe past and future mental and physical pain and suffering, loss of enjoyment of life, medical expenses, and lost earning capacity.

69. The CITY is vicariously liable for the wrongful acts of DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employees' act would subject him or her to liability.

70. Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from his physical injuries, humiliation, disfigurement, financial loss, and reduced earning capacity.

## FOURTH CLAIM FOR RELIEF

**(Violation of Cal. Civ. Code § 52.1 and California Common Law)**

(By PLAINTIFF against all DEFENDANTS)

71. PLAINTIFF repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

72. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts against another person for exercising that person's constitutional rights, which can be shown by a reckless disregard for that person's civil rights. Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred by a reckless disregard for the person's civil rights.

73. On information and belief, COLEMAN, MALDONADO, GUNN, MEJIA, and DOES 1-7, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Mr. Paialii or acted in reckless disregard of Mr. Paialii's civil rights, including by beating him and tasing him without justification or excuse, and by denying him necessary medical care, to prevent him from exercising his right or to retaliate against him for having exercised his rights.

74. DEFENDANTS violated Mr. Paialii's Fourth Amendment rights to be free from unreasonable seizures when they used excessive and unreasonable force against him after he initially resisted, after verbally threatening the officers and after being forcefully taken down to the ground. DEFENDANTS specifically intended to violate Mr. Paialii's constitutional rights as stated above, as demonstrated by DEFENDANT'S reckless disregard for PLAINTIFF'S constitutional rights. Thus, PLAINTIFF can recover for violation of the Bane Act. *See Reese v. County of Sacramento*, 888 F.3d 1030, 1040-45 (2018).

75. On September 12, 2023, DEFENDANTS punched and tased Mr. Paialii multiple times after they forcefully took them down to the ground, even though he was unarmed and presented no threat to the officers or anyone else. DEFENDANTS then brutally manhandled Mr. Paialii as he writhed in pain from the taser deployment.

76. DEFENDANTS violated Mr. Paialii's Constitutional right to be free from excessive and unreasonable force by police officers. DEFENDANTS intended to violate Mr. Paialii's rights and/or acted with reckless disregard with regard to Mr. Paialii's Constitutional rights, which is evidence that they intended to violate Mr. Paialii's rights.

77. Mr. Paialii was caused to suffer severe pain and suffering. The conduct of DEFENDANTS was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Paialii.

78. CITY is vicariously liable for the wrongful acts of DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

79. The conduct of the individual DEFENDANTS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Paialii, entitling him to an award of exemplary and punitive damages. Mr. Paialii also seeks costs and attorneys' fees.

80. Plaintiff brings this claim and seeks damages on this claim, including for Plaintiff's injuries, including for pain and suffering, emotional distress from his physical injuries, humiliation, disfigurement, financial loss, and reduced earning capacity. Plaintiffs also seek treble damages, attorney's fees, and costs under this claim.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff LURING PAIALII requests entry of judgment in his favor and against Defendants COLEMAN, MALDONADO, GUNN, and MEJIA, CITY OF BURBANK, and DOES 1-10, inclusive, as follows:

A. For compensatory damages in an amount according to proof at trial;

B. For other general damages in an amount according to proof at trial;

C. For other non-economic damages in an amount according to proof at trial;

D. For other special damages in an amount according to proof at trial;

E. For punitive damages against the individual defendants in an amount to be proven at trial;

F. For treble damages pursuant to California Civil Code Sections 52, 52.1

G. Attorney's fees pursuant to 42 U.S.C. § 1988;

H. For interest;

I. For reasonable costs of this suit; and

J. For such further other relief as the Court may deem just, proper, and appropriate.

DATED: May 20, 2025        **LAW OFFICES OF DALE K. GALIPO**

By: __/s/ Dale K. Galipo__
DALE K. GALIPO
ERIC VALENZUELA

Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

The Plaintiff named herein hereby demands a trial by jury.

DATED: May 20, 2025           **LAW OFFICES OF DALE K. GALIPO**


                              By: __/s/ Dale K. Galipo_____
                                  DALE K. GALIPO
                                  ERIC VALENZUELA

                              Attorneys for Plaintiff